# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| SHANNON GIBSON, an individual | ) | |
| Plaintiff, | ) | Case # 6:17-cv-3255 |
| | ) | |
| v. | ) | |
| | ) | |
| GREENE COUNTY, AUSTIN LEVINE, | ) | |
| CEDAR COUNTY, SHERIFF JAMES | ) | COMPLAINT |
| McCRARY, SHERIFF JIM ARNOTT, | ) | 42 U.S.C. § 1983 |
| LT "MAYS", DEPUTY "CODY" AND | ) | |
| DOES 1-20 | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | F.R. Civ. P. 38(b) |
| | ) | |

Plaintiff SHANNON GIBSON, through her attorney Joseph LaCome, states as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff SHANNON GIBSON is an individual residing in Missouri, and at all times relevant to Plaintiff's claims, she was being held in custody in the Green County Jail, and the Cedar County Jail, maintained by the Defendants Greene County, and Cedar County, in Springfield, MO, and Stockton, MO, respectively.

2.     Defendant Lt. "Mays" is and was, at all times relevant to this Complaint, an employee of the Green County Sheriff's Department and is being sued in his official capacity.

3.     Defendant Austin Levine is and was, at all times relevant to this Complaint, an employee and deputy of the Cedar County Sheriff's Department and is being sued in his official and individual capacity.

4.     Defendant Sheriff James McCrary is and was, at all times relevant to this Complaint, the Sheriff of Cedar County, MO and is being sued in his official capacity.

5.     Defendant Sheriff Jim Arnott is and was, at all times relevant to this Complaint, the Sheriff of Greene County, MO and is being sued in his official capacity.

1

6. Defendant Greene County is, and at all times was, a political subdivision of the State of Missouri.

7. Defendant Cedar County is, and at all times was, a political subdivision of the State of Missouri.

8. Defendant Deputy Cody is and was, at all times relevant to this Complaint, an employee of the Cedar County Sheriff's Department and is being sued in his official capacity

9. The true names and capacities, whether individual, corporate, associate, or otherwise of defendants named herein as DOES 1 through 20, inclusive, are unknown to plaintiff who therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to show the true names and capacities of these defendants when the same have been ascertained. Plaintiff is informed and believes that each fictitiously named defendant is responsible in law and in fact for the acts alleged herein.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343(a)(3), and supplemental jurisdiction for all state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) in that the defendants are within the State of Missouri, and reside within this District, and under 28 U.S.C. § 1391(b)(2) in that all of the events described herein transpired within, this federal district.

<u>**STATEMENT OF FACTS**</u>

12. Plaintiff was placed into detention at the Greene County Jail beginning April 20th, 2017. Due to over-crowding issues at the Greene County Jail, the plaintiff was transferred to Cedar County Jail. On information and belief, there exists an inmate transfer agreement between both counties.

13. Plaintiff was transferred to Cedar County Jail approximately the last week of

2

April, 2017.

14.     A week after the transfer, plaintiff began receiving handwritten notes by Defendant Austin Levine.   Austin Levine was, at all times relevant to this complaint, a deputy sheriff for Cedar County.   During Levine's shift, several other corrections officers were responsible for handling detainees at the jail.   They include Deputy "Cody," a female deputy, and another deputy that was always referred to as "Sarge."   Plaintiff does not know if deputy "Sarge" refers to the person's rank, or is a nickname.

15.     Minutes after Levine gave the first note to Plaintiff, one of the women in the pod said to plaintiff "This isn't the first time [Levine] has been passing notes.   Levine had other girlfriends in jail."

16.     The notes passed to plaintiff were first flirtatious, but quickly escalated into being sexual.   Levine would often write that the plaintiff was "Mrs. Levine" and that Levine indicated he was attracted to Plaintiff and that he was "falling in love" with plaintiff.   Levine also stated he was going to eventually become a police officer, and implied that as a police officer he would have a high amount of credibility that would enable plaintiff to regain custody of her children.

17.     Levine, when near the plaintiff's "pod" or cell, would frequently reach-through the cell to touch plaintiff's breasts.   This was observed by the plaintiff's cellmate.   Further still, this was in plain view of numerous cameras within the jail.   Any deputies monitoring the cameras could have seen Levine touching the plaintiff, although nothing was ever done to stop this unlawful conduct by Levine.

18.     RSMo § 566.145 states sexual contact with a  prisoner or detainee is a class E felony, and that consent is no defense to this offense.

3

19. Plaintiff had several diagnosed medical issues that she received medical treatment for while in jail. This included medication for the plaintiff's blood pressure, thyroid medication and "water pills." This medication was given to plaintiff twice every day.

20. On or about May 10th, 2017, Levine took the plaintiff out of her cell and stated he had to perform a blood pressure check on her every evening. He took plaintiff into medical, and then while in the medical room Levine sexually touched the plaintiff.

21. This medical room "blood pressure check" occurred every evening for approximately two to two and a half weeks, ending when the plaintiff was transferred back to Greene County Jail on May 26th, 2017. Plaintiff alleges Levine repeatedly sexually assaulted the plaintiff every time she was taken to the medical room.

22. The medical area contains a two-way overhead speaker which allows jail employees, medical staff, and anyone else in the room to communicate back and forth.

23. One time, after Levine sexually touched Plaintiff, the plaintiff heard people giggling over the speaker. Plaintiff perceived that the other deputies on that shift knew, or should have known, exactly what was going on in the medical room, and worse yet, they were listening in on it. Although it was obvious the other deputies knew what was going on, nothing was done by the jail staff to stop the sexual assaults from occurring.

24. As the plaintiff, and Levine, passed through several locked doors within the jail, they automatically opened without Levine pressing any buttons to notify jail staff operating the doors to open them. Plaintiff alleges the doors could only have been opened without verbal command if one of the deputies on shift could have observed Levine on the overhead camera walking through the hallways.

25. On the last several occasions plaintiff was taken to medical room with Levine, at

4

the end of an assault, one of the deputies said, in a falsetto voice over the speaker in the medical room, said "Ohhh Austin, you're so fine!"  Plaintiff believes this was Deputy Cody's voice.  Another time, Cody said in a mocking tone over the loudspeaker "What are you doing in there, Austin?"  Still another time, Levine's cellphone began ringing.  Within seconds someone said over the loudspeaker "You're not supposed to have your phone in medical, Austin.  Don't let Gibson use it."

26.     After the last sexual assault, Plaintiff was transferred to Greene County Jail on or about May 26th, 2017.  Plaintiff took her personal property with her for the transfer.  Plaintiff and several other women were placed into a holding cell while their property was being inspected.  It was approximately 1pm or 2pm.  A woman named Mrs. Mynette was conducting a routine property search.  When Mynette began looking into plaintiff's papers, which included the notes from Levine, she saw a look of shock and alarm on Mynette's face.

27.     Plaintiff was then taken to another holding cell, and then around 4pm she was taken to medical.  When she arrived into medical a nurse and sergeant was there.  The nurse handed her a cup and told her to pee into it in order to have a pregnancy test.  Plaintiff asked why and they said they "needed a test on file."  Plaintiff asked since when did they need a pregnancy test since she had already been in detention for several months, and the nurse replied "since now."  Plaintiff informed the nurse plaintiff's tubes were tied, so it was unnecessary.  The sergeant (name unknown) said she was going to take a pregnancy test whether she liked it or not.  Plaintiff complied with their demand.

28.     When she finished, she was taken back to her holding cell.  The other inmates informed plaintiff that another jail staff member went through all of plaintiff's property and seized additional papers and notes.

5

29.     Plaintiff later went to the bathroom, and after exiting the bathroom two deputies were in her cell room (Matney, and Brenden) waiting for plaintiff.  They immediately cuffed the plaintiff.  Plaintiff asked what she did wrong and they replied "Captain's orders."  She then asked where she was being taken, and they replied "holdover," she again asked why and they said "we don't know."

30.     At approximately 5pm, she was put into the holdover, or isolation cell.  She was still not told why she was cuffed and why she was being put into isolation.

31.     After the deputies left the Plaintiff realized there was no running water in the room.  Plaintiff began knocking on the door, first asking, and after several hours begging, for water or food, and her medication.  Plaintiff was also menstruating, and asked while also asking for food and water, asked for pads.  There was no response by any jail staff.

32.     Plaintiff was never given any of her medication that day, and was not given her necessary medication until approximately June 1st.

33.     The solitary confinement cell plaintiff was placed into was extremely filthy. There was blood splattered a window, along with feces and dried mucus throughout the room, and a single drain hole in the middle of the floor that bugs crawled out of.   Plaintiff was unable to fully sleep, she was dehydrated and hungry, and due to the lack of medication her edema worsened, and her anxiety level was extremely high.

34.     Finally, plaintiff estimates at approximately 3am, she could hear the water in her pod being turned on.  However, because no pads were given to her, she bled all over her clothes and underwear.

35.     Defendant Lt. Mays came in at some point and stated that, due to a "security issue" Plaintiff was being isolated, and that in addition, an investigation at Cedar County was

6

pending.  Plaintiff asked if she could speak to anyone.  Lt. Mays stated that he was told that Plaintiff could not speak to anyone in the jail.  Plaintiff was further told she was not allowed any phone privileges, including any phone-calls to her criminal attorney (public defender).

36.     Later, a criminal investigator from the Missouri Highway Patrol interviewed the plaintiff concerning the sexual contact between plaintiff and Levine.  The investigator informed plaintiff was not the focus of any criminal charges.  The investigator wanted statements from her concerning Defendant Levine.  Plaintiff did not want to be interviewed by the investigator and did not give full or complete answers the investigator wanted.  The investigator ended the interview early.  Plaintiff asked if she could finally be taken out of the hole, and the investigator said "I don't see why not."  Relieved, when she was taken back to the hole she began packing her belongings.

37.     While still packing, Lt Mays returned and said "You are not getting out of here."  Confused, plaintiff asked why not since the investigator said she could be freed, but Mays said "because we didn't like the answers you gave the investigator," and that "if you want to make things easier on yourself, you need to cooperate with the investigator."  Mays stated Plaintiff would remain in isolation indefinitely until she cooperated.  Afterwards, he left.

38.     The plaintiff was moved later to another cell.  The conditions there were marginally better, although plaintiff still had no medication.  Plaintiff later discovered this room is called the "crazy cell" which contains a security camera that was pointed right at the toilet in the room (i.e. zero privacy).  Plaintiff finally saw her attorney, approximately May 31st.  She informed him of her mistreatment and of the investigation.  The attorney was shocked at the plaintiff's mistreatment and contacted jail staff.  On June 1st the plaintiff was moved back to the general population, without explanation.

39. Plaintiff, in addition to the treatment she suffered, and lack of medical attention, was further victimized by Greene County, and by its deputies, because she was not afforded counsel when speaking to this investigator, nor at any time while she was in solitary confinement, and she was told that she could not leave the isolation hole at Greene County Jail until she cooperated with the investigation against Defendant Levine.

40. On the last day of the plaintiff's time in the hole, she was finally given medication. A nurse visited the plaintiff in the hole. The nurse would not speak to plaintiff, and avoided eye contact with her. Throughout plaintiff's time in isolation, she suffered extreme anxiety, and, because her edema remained untreated, her condition worsened each day of confinement.

41. Later, when plaintiff was taken back into the general population, the nurse later spoke to plaintiff and apologized, stating that the deputies forbid the nurse from saying anything at all to the plaintiff. The nurse stated, and by plaintiff's own understanding of stages of edema, that by the time she was finally given medication by the nurse, plaintiff had very serious Stage 4 pitting.

42. Plaintiff's repeated sexual assault by Defendant Levine, mistreatment by the Greene County Jail corrections officers, and other violations of her constitutional rights occurred as a direct result of the policies, acts and omissions of Defendants Greene County, and Cedar County, which policies included:

    a) Placing Defendant Levine in a position of power, authority, and control over the inmates, and allowing him access to otherwise restricted areas within the jail;

    b) allowing Defendant Levine to take female inmates such as Plaintiff into the medical area, which had blind spots that could lead to sexual assault, without any safeguards, or fear of being seen by guards or inmates; worse yet, based on plaintiff's statements, Levine had nothing to fear because the other officers in the jail knew, or should of known what was going on,

8

based on what the deputies heard over the loudspeaker, and based on the fact that they automatically opened the jail doors when Levine escorted Plaintiff into the medical room

c) failing to adequately train and supervise jail guards, including Defendant Levine, to protect the constitutional rights of the jailers;

d) each County failing to adequately supervise its agents and employees;

e) failing to provide mediation to plaintiff for almost a week, which led to a worsening of her health and medical issues;

f) using solitary confinement for an improper purpose, i.e., a torture device to extract confessions or "cooperation" from the plaintiff

g) denying the Plaintiff the ability to speak to her attorney;

h) ostensibly failing to respond to clear indications that Defendant Levine was behaving inappropriately and unlawfully;

i) giving Defendant Levine unfettered access to the female inmates and areas of the jail where female inmates could isolated and taken advantage of;

j) Allowing Levine to openly grope plaintiff, in full view of jail cameras, with impunity;

43. At all times mentioned herein, Defendant Levine and DOES 1-20 was an agent and employee of Defendant Cedar County, and Defendant Mays, and DOES 1-20 was an agent and employee of Defendant Greene County. All parties were acting under color of state law and within the course and scope of such agency and employment. On information and belief, DOES 1-20 in Greene County either ordered Mays to act in violation of the plaintiff's constitutional rights, or acquiesced to violation of her rights due to deliberate indifference. On information and belief, DOES 1-20 in Cedar County, Levine and Cody acted in violation of the plaintiff's constitutional rights, or acquiesced to violation of her rights due to deliberate indifference.

44. The policies of Cedar County placed Defendants Levine, Cody and DOES 1-20 in control of the plaintiff, which gave them power and authority over the county's jail inmate population on behalf of Cedar County, such that at all times mentioned herein, Defendants Levine, Cody and DOES 1-20 was an agent and employee of the Defendant Cedar County and was acting under color of state law and within the course and scope of such agency and

9

employment.

45. The policies of Greene County placed Defendant Mays and DOES 1-20 in control of the plaintiff, which gave him power and authority over its jail inmate population on behalf of Cedar County, such that at all times mentioned herein, Mays and DOES 1-20 was an agent and employee of the Defendant Greene County and was acting under color of state law and within the course and scope of such agency and employment.

46. Defendant Levine used the power, authority, and control vested in him by Cedar County over the inmate population to sexually assault Plaintiff, and on information and belief, other unknown females at the Cedar County jail.

47. Defendant Mays used the power, authority, and control vested in him by Greene County over the inmate population to deny medication to the plaintiff, deny her food and water the first day of her detention on May 26th 2017 at Greene County, andn subject her to cruel and unusual punishment because the plaintiff refused to cooperate with an investigation in which plaintiff was the victim.

48. On information and belief, members of Cedar County, including Sheriff McCrary, knew or should have known that Defendant Levine was abusing his official position by passing notes with sexual content to plaintiff, and by compelling Plaintiff to engage in sexual activity.

49. On information and belief, members of Greene County, including Sheriff ARNOTT, knew or should have known that Defendant Mays and DOES 1-20 was abusing his official position by violating the plaintiff's constitutional rights, and forcing her into solitary confinement in order to compel plaintiff to "cooperate" with an investigation

50. The defendants' pattern of illegal activity, as represented by their actions,

establishes the existence of a continuing, persistent and widespread practice of illegal, unconstitutional misconduct.

51.     The above allegations constitute violations of Plaintiff's constitutional rights by the Defendants, including, but not limited to, her right to Due Process as guaranteed by the 1st and 14th Amendments to the Constitution, and her right to privacy as embodied in the First, Third, Fourth, Fifth and Fourteenth Amendments to the Constitution, and subjecting the plaintiff to cruel and unusual punishment in violation of the Eight Amendment.

52.     As a result of the allegations set forth above, Plaintiff has suffered damages, including, but not limited to, pain and suffering, mental anguish, severe emotional and physical distress, fear for her safety, humiliation, and the deprivation of her civil rights.

## COUNT I - 42 U.S.C. § 1983
## AGAINST ALL DEFENDANTS

53.     Plaintiff re-alleges each paragraph of this Complaint as though fully set forth.

54.     Defendant Arnott, Cedar County and DOES 1-20 violated Plaintiff's constitutional rights to Due Process of law and her right to privacy by allowing her to be raped by Defendant Levine and by facilitating Levine in raping her, and by failing to prevent Levine from raping her. Such acts were committed in the course and scope of the Warden's employment and under color of state law.

55.     Defendant Levine violated Plaintiff's constitutional rights to Due Process of law and her right to privacy by raping her and using the threat of violence and the power vested in him by the County and Sheriff to do so.  Such acts were committed in the scope and course of Levine' agency and under color of state law.

56.     Defendants Arnott & McCrary, and their subordinates violated Plaintiff's constitutional rights to Due Process of law and her right to privacy by instituting a policy at the

Cedar County jail whereby Defendant Levine was not supervised, the other Cedar County deputies ignored gross violations of sexual assaults that were filmed on the jail cameras, subjecting the plaintiff to cruel and unusual punishment in the Greene County Jail by locking her in solitary confinement in order to extract "cooperation" for a criminal investigation, and unfettered access given to jail employees to female jailers, such as Plaintiff, and further, by creating a culture of indifference where these acts could be committed.

57. The acts and omissions of Defendants were intentional and taken in total disregard for the rights and safety of Plaintiff such that Plaintiff is entitled to an award of punitive damages.

## COUNT II - NEGLIGENT TRAINING, SUPERVISION AND RETENTION AGAINST GREENE COUNTY, CEDAR COUNTY, MCCRARY & ARNOTT

58. Plaintiff re-alleges each paragraph of this Complaint as though fully set forth.

59. Defendants owed Plaintiff the duty to exercise reasonable and ordinary care to train its officers, management, and guards in order to prevent her unlawful physical injury, including, but not limited to, the duty to exercise reasonable and ordinary care to provide adequate training so as to prevent her from being sexually assaulted by other inmates, jail agents and employees.

60. Defendants knew or reasonably should have known that individuals whom it employed were not properly trained or supervised to fulfill their duties and obligations owed to Plaintiff and others similarly situated.

61. Defendants failed to take steps to adequately train and/or supervise his agents and employees to ensure that such agents and employees were able to fulfill such duties and obligations to Plaintiff and others.

62. Defendants continued to employ Defendants Levine, Mays, Cody and DOES 1-

20 despite their inadequate training.

63. Defendants failed to exercise reasonable and ordinary care in training and/or supervising Defendant Levine, Mays, Cody and DOES 1-20 while performing their duties.

64. Defendants continued to authorize Defendant Levine, Lt. Mays, Cody & DOES 1-20 to act as deputies and/or jail employees in their respective county jails, despite his inadequate training and supervision.

65. Defendants Cedar County & McCrary knew or reasonably should have anticipated that Levine was subjecting Plaintiff to unlawful sexual contact

66. Defendant Greene County and Arnott knew or reasonably should have anticipated that Mays was violating the Plaintiff's constitutional rights, by putting her into solitary confinement, without proper medical attention, nor access to food or water.

67. Defendants failed to exercise reasonable and ordinary care to protect Plaintiff from such unlawful injury.

68. As a direct and proximate result of Defendants' negligence, Plaintiff was damaged by being deprived of her civil rights, suffering cruel and unusual punishment, suffering humiliation and mental anguish, emotional distress, inadequate medical attention, and feared for her safety.

### COUNT III - MUNICIPAL GOVERNMENT LIABILITY UNDER 42 U.S.C. § 1983 AGAINST GREENE COUNTY & CEDAR COUNTY

69. Plaintiff re-alleges each paragraph of this Complaint as though fully set forth.

70. At all times relevant to this Complaint, Defendants Greene County, Cedar County, Arnott & McCrary had final policy-making authority with respect to law enforcement activities at Cedar County Jail and Greene County Jail, respectively.

71. Defendants Green County and Cedar County maintained a policy, practice,

13

procedure and/or custom of failing to adequately control, monitor and supervise male prison guards and female inmates.

72. Defendants Green County and Cedar County maintained a policy, practice, procedure and/or custom of allowing a jail guard, such as Defendant Levine, to manage the jail population and to have unfettered access to female inmates without any supervision.

73. Defendants Green County and Cedar County either failed to prevent, or allowed Levine to sexually assault Plaintiff while she under their control.

74. Defendants Green County and Cedar County maintained a policy, practice, procedure and/or custom of allowing Levine to sexually assault Plaintiff while she was under their control.

75. Defendant Arnott & McCrary knew, should have known of, or promulgated these policies, practices, procedures and/or customs, but took no action to stop them.

76. Defendants Cedar County's policy, practice, procedure and/or custom of allowing Defendant Levine to have unfettered, unsupervised access to female prisoners and to sexually assault and ostensibly rape Plaintiff caused the deprivation of Plaintiff's constitutional rights to Due Process of law and her right to privacy.

77. Defendants Green County and Cedar County's policy, practice, procedure and/or custom of allowing a jail guards to manage the jail population and access otherwise restricted areas caused the deprivation of Plaintiff's constitutional rights to Due Process of law and her right to privacy.

78. Defendants had actual or constructive knowledge of Defendants Levine and Lt Mays conduct toward Plaintiff.

79. Defendant Cedar County took no action to prevent Defendant Levine's violation

of Plaintiff's constitutional rights, despite indications on its own security cameras within the jail, and by the acts committed by Deputy Cody, that should have obviously alerted the Sheriff and County of sexual assaults occurring.

80. Defendant Greene County took no action to prevent Defendant Mays' violation of Plaintiff's constitutional rights, despite knowledge through its agents and employees of a criminal investigation, and knowledge that the plaintiff needed medication and medical attention but was denied access to such medication for almost a week. Further, the plaintiff was denied access to her criminal defense lawyer for the duration of her solitary confinement.

81. Defendant Cedar County and Greene County is liable to Plaintiff for its failure to train Defendant Levine, Mays and Cody, control those defendants, supervise the defendants, and remove the defendants from duty.

82. As a result of Greene County and Cedar County's policy or custom, Plaintiff has suffered damages, including, but not limited to, pain and suffering, mental anguish, severe emotional and physical distress, fear for her safety, humiliation, and the deprivation of her civil rights.

### COUNT IV - CRUEL AND UNUSUAL PUNISHMENT
### EIGHTH AMENDMENT, U.S. CONSTITUTION
### AGAINST DEFENDANTS GREENE COUNTY, SHERIFF ARNOTT, LEVINE, SHERIFF MCCRARY, CEDAR COUNTY & DEPUTY MAYS

83. Plaintiff re-alleges each paragraph of this Complaint as though fully set forth.

84. The 8th amendment cruel and unusual punishment clause applies to conditions of incarceration. Prison officials may not deprive inmates of "the basic necessities of life, which include reasonably adequate food, clothing, shelter, sanitation, and necessary medical attention." Newman v. State of Alabama, 559 F.2d 283 (5th Cir. 1977). Nor may they "maliciously and sadistically" use force to harm inmates. (Hudson v. McMillian, 503 U.S. 1

15

(1992).

85.     Plaintiff, during her first night in solitary confinement, was denied access to medication and medical attention, access to running water, and access to food while in detention at the Greene County Jail.  Plaintiff was also denied medication for a full week to treat her medically diagnosed conditions.    The failure of Greene County & Sheriff Arnott, to adequately protect the plaintiff from this mistreatment violated the plaintiff's rights under the 8th Amendment to the U.S. Constitution.

86.     Plaintiff was repeatedly sexually assaulted by defendant Levine while in dentition at Cedar County Jail.

87.     Rape or sexual assault of prisoners by correctional officers violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825 (1994); Schwenk v. Hartford, 204 F.3d 1187 (9th Cir. 2000).  Defendant Levine, who committed the sexual assaults against Plaintiff, directly violated plaintiff's 8th Amendment rights.  The failure of Cedar County, Sheriff McCrary, to adequately protect the plaintiff from these sexual assaults violated the plaintiff's rights under the 8th Amendment to the U.S. Constitution.

88.     As a result of these violations, the plaintiff suffered damages, including, but not limited to, pain and suffering, mental anguish, severe emotional and physical distress, fear for her safety, humiliation, and the deprivation of her civil rights.

### COUNT V- ASSAULT
### AGAINST LEVINE, CEDAR COUTNY & SHERIFF MCRARY

89.     Plaintiff re-alleges each paragraph of this Complaint as though fully set forth.

90.     As a direct and proximate result of the intentional acts of Levine, plaintiff suffered damages, was deprived of her civil rights, suffered mental anguish, emotional distress, fear for her safety and suffered humiliation.

16

91. Defendant Levine was acting within the scope and course of his employment as a guard with Defendants Cedar when he sexually assaulted Plaintiff, when he degraded Plaintiff, when opening the plaintiff's cell door, escorting to the medical room, and then assaulting her in the medical room, and while escorting Plaintiff back to her cell .

92. Levine's acts were intentional, and taken in total disregard for the rights of Plaintiff such that Plaintiff is entitled to an award of punitive damages.

## COUNT VI – BATTERY
## AGAINST LEVINE, CEDAR COUTNY & SHERIFF MCRARY

93. Plaintiff re-alleges each paragraph of this Complaint as though fully set forth.

94. Defendants Levine, acting in the course and scope of his agency, committed a battery upon Plaintiff committing sexual assaults against her.

95. Defendant's acts were intentional and taken in total disregard for the rights of Plaintiff such that Plaintiff is entitled to an award of punitive damages.

96. Defendants Cedar County and Sheriff MCRARY are vicariously liable for the acts of Defendant Levine because he was supervising the jail inmate population at Cedar County Jail within the scope and course of his employment as a guard with the County and the when he committed the aforementioned acts.

## COUNT VII - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AGAINST CEDAR COUNTY & AUSTIN LEVINE

97. Plaintiff re-alleges each paragraph of this Complaint as though fully set forth.

98. Defendant Levine inflicted emotional distress on Plaintiff through his extreme and outrageous conduct.

99. As a direct and proximate result of such intentional infliction of emotional distress by defendants, Plaintiff has suffered and continues to suffer extreme mental anguish.

17

100. The extreme and outrageous conduct of defendant, as described above, was made without just cause and provocation and was intentional and taken in total disregard for the rights and safety of Plaintiff such that Plaintiff is entitled to an award of punitive damages.

101. Defendants Cedar County is vicariously liable for the acts of Levine because he was supervising the inmates at the County Jail within the scope and course of his employment with Cedar County when he committed the aforementioned acts.

## COUNT VIII - 42 U.S.C. § 1988
## AGAINST ALL DEFENDANTS

102. Plaintiff re-alleges each paragraph of this Complaint as though fully set forth.

103. With respect to the claims enforcing the provisions of 42 U.S.C. § 1983 on which Plaintiff prevails, Plaintiff is entitled to compensation for her reasonable attorneys' fees and costs, as provided for by 42 U.S.C. § 1988(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, for all causes of action, as follows:

1. Actual damages sufficient to compensate her for her injuries;
2. Damages for medical and related expenses according to proof;
3. Damages for loss of earnings according to proof;
4. Punitive damages in an amount sufficient and necessary to punish these Defendants and to deter others from like actions;
5. For reasonable attorneys' fees and litigation expenses;
6. For costs of the suit herein;
7. Any other and further relief that the court considers just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues triable to a jury.

Dated: 8/10/17

/S/ JOSEPH LACOME
Joseph LaCome, MO # 63533
3025 E. Hawkins St.
Springfield, MO 65804
415-847-1944
Plaintiff's Attorney

Case 6:17-cv-03255-BP    Document 1    Filed 08/11/17    Page 19 of 19